EXHIBIT A

THIS IS A CONSUMER CREDIT CONTRACT

**RETAIL INSTALLMENT SALE CONTRACT**

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| OLIVIA DENISE WILSON<br>249 DRAYTON HALL DR<br>WEST COLUMBIA, SC 29172 LEXINGTON CO | N/A | PERFORMANCE FORD<br>213 Southeast Blvd<br>Clinton, NC 28328 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2019 | RAM<br>PROMAST | 3C6TRVAG4KE500940 | Personal, family, or household unless otherwise indicated below<br>☒ business<br>☐ agricultural ☐ ____ N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1,000.00 |
|---|---|---|---|---|
| 7.99 % | $ 4,551.69 | $28,149.75 | $ 32,701.44 | $ 33,701.44 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $ 681.28 | MONTHLY beginning 09/14/21 |
| N/A | N/A | N/A |
| | | N/A |

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ __15.00__ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED
1 Cash Price (including $ __5680.00__ sales tax) ..................... $ __27,495.00__ (1)
2 Total Downpayment =
   Trade-in ___N/A___
    (Year)   (Make)    (Model)
   Gross Trade-In Allowance ................................. $ __N/A__
   Less Pay Off Made By Seller to __N/A__ .............. $ __N/A__
   Equals Net Trade In ...................................... $ __N/A__
   + Cash .................................................. $ __1,000.00__
   + Other __N/A__ ........................................ $ __N/A__
   + Other __N/A__ ........................................ $ __N/A__
   + Other __N/A__ ........................................ $ __N/A__
   (If total downpayment is negative, enter "0" and see 4I below) ... $ __1,000.00__ (2)
3 Unpaid Balance of Cash Price (1 minus 2) .................. $ __26,495.00__ (3)
4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):
   A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
    Life .......................................... $ __N/A__
    Disability .................................... $ __N/A__
   B Vendor's Single Interest Insurance Paid to Insurance Company ... $ __N/A__
   C Other Optional Insurance Paid to Insurance Company or Companies ... $ __N/A__
   D Optional Gap Contract .................................. $ __1,000.00__
   E Official Fees Paid to Government Agencies ............... $ __N/A__
   F Government Taxes Not Included in Cash Price ............ $ __N/A__
   G Government License and/or Registration Fees
     LICENSE AND/OR REG FEES ................. $ __99.75__
   H Government Certificate of Title Fees ................... $ __55.00__
   I Other Charges (Seller must identify who is paid and describe purpose)
    to __N/A__ for Prior Credit or Lease Balance ...... $ __N/A__
    to PERFORMANCE FORD for DOC FEE ............... $ __499.00__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    to __N/A__ for __N/A__ .......................... $ __N/A__
    Total Other Charges and Amounts Paid to Others on Your Behalf ... $ __1,654.75__ (4)
5 Amount Financed (3 + 4) ................................. $ __28,149.75__ (5)

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before __N/A__ , Year __N/A__ . SELLER'S INITIALS __N/A__

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose or you may provide the required insurance through an existing policy owned or controlled by you. Insurance you provide must be acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
  Credit Life $ ____ N/A
  Credit Disability $ ____ N/A
Insurance Company Name __N/A__
Home Office Address __N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
☐ ____ N/A
  Type of Insurance    Term
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

☐ ____ N/A
  Type of Insurance    Term
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _____
  Buyer Signature      Date

X _____
  Co-Buyer Signature      Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**Returned Check Charge:** You agree to pay a charge of $ __35.00__ if your check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___48___ Mos.     Cost __N/A__     Name of Gap Contract _____

I want to buy a gap contract.
Buyer Signs X _OKOW_

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X _OKOW_     Co-Buyer Signs X _____

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained, if you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ __N/A__ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _OKOW_    Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X _OKOW_    Date 07/31/21    Co-Buyer Signs X __N/A__    Date N/A
Buyer Printed Name OLIVIA DENISE WILSON    Co-Buyer Printed Name __N/A__    Title ____
If the "business" use box is checked is "Primary Use for Which Purchased": Print Name ____ Title ____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle being purchased.
Other owner signs here X _____ Address _____
Seller signs PERFORMANCE FORD    Date 07/31/21    By X _____ Title ____

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☐ Assigned without recourse    ☐ Assigned with limited recourse
Seller PERFORMANCE FORD    By X _____ Title ____

LAW FORM NO. 553-NC-ARB (REV 12/16)<br>THIS PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## 1. FINANCE CHARGE AND PAYMENTS

**a.** How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b.** How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c.** How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.** You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a.** If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.** Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.** Security interest.
You give us a security interest in:
 • The vehicle and all parts or goods installed in it;
 • All money or goods received (proceeds) for the vehicle;
 • All insurance, maintenance, service or other contracts we finance for you; and
 • All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.** Insurance you must have on the vehicle.
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.** What happens to returned insurance, maintenance, service, or other contract charges. If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b.** You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
 • You do not pay any payment on time;
 • You give false, incomplete, or misleading information during credit application;
 • You start a proceeding in bankruptcy or one is started against you or your property; or
 • You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.** You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay attorney's fees and court costs, as the law allows. The maximum attorney's fee you will pay will be 15% of the amount you owe.

**d.** We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peaceably and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for those items back, we may dispose of them as the law allows.

**e.** How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f.** We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes an express warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5. Used Car Buyers Guide.

The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. APPLICABLE LAW

Federal law and the law of the state of North Carolina apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

### ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Olivia D. Wilson
243 Drayton Hall Drive
West Columbia, South Carolina 29172

ATTN: CFO Russ Hutchinson
Ally Financial
500 Woodward Ave
Detroit, MI 48226

12/19/2023

Re: Agreement No.: 228043404893

Dear Russ Hutchinson (CFO of Ally Financial),

I am writing on behalf of the consumer account referenced above as 228043404893, as it seems that there has been a disconnect and breach of contract regarding the instruction of payment to Ally Bank, and due to Ally Financial's failure to adhere, the principal has sustained damages, being deprived of the vehicles' use.

A consumer credit transaction between Ally Financial and the principal account holder, OLIVIA WILSON (of whom I am the administrator), occurred on July 31, 2021. The total amount financed was $28,149.75 and backed by an application as a security for payment and granting credits equivalent to U.S. funds of the same amount due to the principal, OLIVIA WILSON, as the maker and registered payee of the negotiable instrument to which opened the account. The cost of its use [the principals' extension of credit] was $4,551.69.

Having claimed the rights to the credits generating U.S. funds per the Federal Reserve Act to which Ally Financial is regulated by, I hereby make this demand as a final effort to amicably resolve this matter without the support of third parties and tender the opening application as payment to the principal's account.

Once the credits entitled to the principal have been applied, please refund the overages paid into the account as promised in your correspondence dated July 19, 2021 (and general practice): "If the amount you send us is more than what you owe, we will refund the difference."

Lastly, I demand an authorized amendment pursuant to section 178 of the Personal Property Securities Act. Following normal procedure, I would expect to receive a copy of the amended financing statement referencing VIN: 3C6TRVAG4KE508940 and the return and release of the vehicle from tow and its title within 5 days of the receipt of this notice and correspondence.

If we cannot resolve this matter within the given timeframe, I reserve the right to seek legal remedies and the right to revoke my security interest. I look forward to settling this account.

Sincerely,

Olivia D. Wilson
Attorney-in-fact for OLIVIA WILSON

Olivia D. Wilson
243 Drayton Hall Drive
West Columbia, South Carolina 29172


ATTN: CEO Jeffrey Brown
Ally Financial
500 Woodward Ave
Detroit, MI 48226


1/5/2024

Re: Agreement No.: 228043404893


Subject: Notice of Breach of Contract Lawsuit


Dear Jeffrey Brown,

I hope this letter finds you well. My name is Olivia Wilson, and I am writing to inform you that I have recently filed a breach of contract lawsuit against Ally Financial. I believe it is essential to communicate this matter directly to you, as the CEO of the company, to ensure that all relevant parties are aware of the situation.

The lawsuit stems from issues related to non-performance of fiduciary duties, illegal repossession, and security fraud, which has led to significant disruptions and financial implications for me. Despite my efforts to resolve this matter through other channels, it has become necessary to pursue legal action to seek a fair resolution.

I want to emphasize that my intention is not to damage the reputation of Ally Financial, but rather to address and resolve the contractual issues at hand. I understand the importance of maintaining a positive relationship with your customers, and I hope that through legal proceedings, we can arrive at a mutually agreeable resolution.

I am open to engaging in discussions or negotiations to resolve this matter outside of the courtroom, provided that such discussions are conducted in good faith. I believe that an amicable resolution would be in the best interest of all parties involved.

Please consider this letter as formal notice of the breach of contract lawsuit against Ally Financial. I have enclosed copies of relevant documents, including the lawsuit filing, for your reference. I kindly request that you forward this information to your legal department for further action.

I appreciate your attention to this matter and look forward to a timely and fair resolution. If you or your legal team require any additional information, please do not hesitate to contact me at owilson28@yahoo.com or 803-347-5786.

Thank you for your understanding and cooperation.

Sincerely,

Olivia D. Wilson
Attorney-in-fact for OLIVIA WILSON

THIS DOCUMENT CONTAINS A TRUE WATERMARK · HOLD UP TO LIGHT TO VIEW

**Western Union**    WESTERN UNION FINANCIAL SERVICES INC. · ISSUER · Denver, Colorado    **MONEY ORDER**

Payable at Wells Fargo Bank Grand Junction - Downtown, N.A., Grand Junction, Colorado

19-597040374

A 323832 D 111023
T 1037 16
195970403746 L 000587    $ 500.00

PAY EXACTLY    FIVE HUNDRED DOLLARS AND NO CENTS

PAY TO THE
ORDER OF    Ally Bank

c/o 243 Dlanton Hall Dr West Columbia,
South Carolina [29172]

SENT UNDER THREAT &
DURESS

228-0434-09893

Wilson, Ouria / Agent
PURCHASER'S SIGNATURE

MOBILE DEPOSIT PROHIBITED

⑆102100400⑆ 40195970403746⑈



**W Western Union**

THIS DOCUMENT CONTAINS A TRUE WATERMARK · HOLD UP TO LIGHT TO VIEW

WESTERN UNION FINANCIAL SERVICES INC. · ISSUER · Denver, Colorado

Payable at Wells Fargo Bank Grand Junction · Downtown, N.A., Grand Junction, Colorado

**MONEY ORDER**

19-597040375

A 323832 D 111023
T 1037 16
195970403755 L 000587

**$ 500.00**

PAY EXACTLY   FIVE HUNDRED DOLLARS AND NO CENTS

PAY TO THE ORDER OF   ALLY BANK

DENT UNDER THREAT & DURESS

228 + OMITBM MOM 8915

c/o 243 PLAYTON HALL DR WEST COLUMBIA, SOUTH CAROLINA [29172]

Wilson, Olivia/Agent

PURCHASER'S SIGNATURE
PURCHASER BY SIGNING YOU AGREE TO THE TERMS ON THE REVERSE SIDE

**MOBILE DEPOSIT PROHIBITED**

⑈102100400⑈ 40195970403755⑈

THIS DOCUMENT CONTAINS A TRUE WATERMARK · HOLD UP TO LIGHT TO VIEW

**WESTERN UNION FINANCIAL SERVICES INC. · ISSUER · Denver, Colorado**
Payable at Wells Fargo Bank Grand Junction · Downtown, N.A., Grand Junction, Colorado

W Western Union

**MONEY ORDER**

19-597040373

A 323832 D 111023
T 1037 16
195970403737 L 000587

$ 500.00

SENT UNDER THREAT
& DULESS

228 · TOM30Am · OH 893

PAY EXACTLY   FIVE HUNDRED DOLLARS AND NO CENTS

PAY TO THE
ORDER OF   ALLY BANK

C/O 243 DRAYTON HALL DR · WEST COLUMBIA,   Wilson, Olivia / Agent
South Carolina [29172]

PURCHASER'S ADDRESS                    PURCHASER'S SIGNATURE
                                       PURCHASER BY SIGNING YOU AGREE TO THE TERMS ON THE REVERSE SIDE
                                       **MOBILE DEPOSIT PROHIBITED**

⑈102100400⑈ 40195970403737⑈



THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO VIEW

WESTERN UNION FINANCIAL SERVICES INC - ISSUER - Denver, Colorado

**MONEY ORDER**

Western Union

Payable at Wells Fargo Bank Grand Junction - Downtown, N.A., Grand Junction, Colorado

***PAY EXACTLY $58.84    19-597040376

A 323832 D 111023
T 1037 16                          $ 58.84
195970403764 L 000587

PAY EXACTLY    FIFTY-EIGHT DOLLARS AND EIGHTY-FOUR CENTS

SENT UNDER THREAT & DURESS

228-0434-04893

PAY TO THE ORDER OF    ALLY BANK

Wilson, Olivia /Agent

c/o 243 DRAYTON HALL DR MIDWEST COLUMBIA, SOUTH CAROLINA [29172]

PURCHASER'S SIGNATURE

MOBILE DEPOSIT PROHIBITED

⑆102100400⑆ 40195970403764⑈

EXHIBIT B

5:18

◀ Yahoo Mail

🔒 tools.usps.com



≡                    🔍

# USPS Tracking®

**FAQs** ›

**Tracking Number:**

**Remove** ✕

# EJ338284543US

⧉ Copy          🏃 Add to Informed Delivery

## Scheduled Delivery by

## MONDAY

# 13

**November 2023** ⓘ

by

## 6:00pm ⓘ

Your item has been delivered and is available at a PO Box at 9:54 am on November 13, 2023 in MINNEAPOLIS, MN 55438.

**Get More Out of USPS Tracking:**

🔍 **USPS Tracking Plus®**

✓ **Delivered**
**Delivered, PO Box**

MINNEAPOLIS, MN 55438
November 13, 2023, 9:54 am

See All Tracking History

EXHIBIT 1

**2:49**    ..ıll LTE 4

Close                                    (?)

# Transactions

🔍

| Dec 29, 2023 | $500.00 |
| Payment Processing Center | ✓ Completed |

| Dec 29, 2023 | $500.00 |
| Payment Processing Center | ✓ Completed |

| Dec 28, 2023 | $500.00 |
| Payment Processing Center | ✓ Completed |

| Dec 26, 2023 | $0.00 |
| Reallocations | ✓ Completed |

| Dec 20, 2023 | $426.00 |
| Reallocations | ✓ Completed |

| Dec 20, 2023 | $1,600.00 |
| Reallocations | ✓ Completed |

| Dec 19, 2023 | $1,200.00 |
| Reallocations | ✓ Completed |

| Aug 15, 2023 | $681.28 |
| One-Time Payment | |

# *AUTO LOAN SECURITIZATION AUDIT REPORT*<sup>TM</sup>

*Prepared for:*

**OLIVIA DENISE WILSON**

*For Goods Described as:*

**Used 2019 RAM PROMAST VIN# 3C6TRVAG4KE508940**

*Prepared on:*

*January 11, 2024*

## COPY OF AGREEMENT PROVIDED BY THE BUYER

### RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE
### THIS IS A CONSUMER CREDIT DOCUMENT
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| OLIVIA DENISE WILSON<br>243 DRAYTON HALL DR<br>WEST COLUMBIA, SC 29172 LEXINGTON CO | N/A | PERFORMANCE FORD<br>213 Southeast Blvd<br>Clinton, NC 28328 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2019 | RAM<br>PROMAST | 3C6TRVAG4KE608940 | Personal, family, or household unless otherwise indicated below<br>☒ business<br>☐ agricultural    N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $1,000.00 is |
|---|---|---|---|---|
| 7.39 % | $4,551.69 | $28,149.75 | $32,701.44 | $33,701.44 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $ 681.28 | MONTHLY    beginning 09/14/21 |
| N/A | $ N/A | N/A |

N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ 15.00 .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose or you may provide the required insurance through an existing policy owned or controlled by you. Insurance you provide must be acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer  ☐ Co-Buyer  ☐ Both

☐ Credit Disability:   ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:

Credit Life $ _____ N/A

Credit Disability $ _____ N/A

Insurance Company Name _____ N/A
_____ N/A

Home Office Address _____ N/A
_____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item

## SELLER ASSIGNS ITS INTEREST TO ALLY FINANCIAL

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs **X** _Olivia_    Co-Buyer Signs **X**    N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs **X** _Olivia_    Date 07/31/21    Co-Buyer Signs **X**  N/A    Date N/A

Buyer Printed Name  OLIVIA DENISE WILSON    Co-Buyer Printed Name  N/A

If the "business" use box is checked in 'Primary Use for Which Purchased': Print Name    N/A    Title    N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. Another owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X**    N/A    Address    N/A

Seller signs  PERFORMANCE FORD    Date 07/31/21  By **X**    Title  F+I

Seller assigns its interest in this contract to  ALLY FINANCIAL    (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse    ☑ Assigned without recourse    ☐ Assigned with limited recourse

Seller

By **X**   PERFORMANCE FORD    Title   F+I

ILAW FORM NO. 553-NC-ARB (REV 10/19)
©2019 The Reynolds and Reynolds Company. TO ORDER: www.reysource.com, 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Authoritative Copy [20210803]

**ORIGINAL LIENHOLDER**

# SECTION 2: SECURITISATION PARTICIPANTS

| SELLER/CREDITOR | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| PERFORMANCE FORD | ALLY BANK [1] | ALLY AUTO ASSETS LLC |
| **ISSUING ENTITY** | **NOTE TRUSTEE/ SECURITY TRUSTEE** | **SERVICER** |
| ALLY AUTO RECEIVABLES TRUST 2022-2 | U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION | ALLY BANK [1] |
| **PAYING AGENT (role includes holding of Transaction Documents)** | **CLOSING DATE** | **MATURITY DATE** |
| U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION | OCTOBER 12, 2022 | MAY 17, 2027 |

[1] The sponsor is a wholly-owned indirect subsidiary of Ally Financial. On December 24, 2008, and in connection with the conversion of Ally Bank into a Utah-chartered commercial nonmember bank, Ally Financial and IB Finance Holding Company, LLC ("**IB Finance**") were each approved by the FRB as bank holding companies under the Bank Holding Company Act of 1956, as amended ("**BHCA**"). IB Finance is the direct holding company for Ally Bank and is a subsidiary of Ally Financial. As a result, Ally Financial and IB Finance are now subject to the supervision and examination of the FRB.

*Indenture Trustee*

U.S. Bank Trust Company, National Association.

*Owner Trustee*

BNY Mellon Trust of Delaware.

*Asset Representations Reviewer*

Clayton Fixed Income Services LLC.

**THE NOTES**

The issuing entity will issue the classes of notes listed on the cover page of this prospectus. Certain of the notes will be available for purchase in denominations of $1,000 and integral multiples thereof, and will be available in book-entry form only. We sometimes refer to these notes, other than the notes to be retained by the depositor or another majority-owned affiliate of the sponsor, as the "**offered notes.**"

The "**record date**" for any distribution date will be the close of business on the date immediately preceding the distribution date, or if definitive notes are issued, the last day of the preceding monthly period.

The final scheduled distribution dates of the offered notes are listed on the cover page of this prospectus.

Approximately 5% (by initial principal balance) of each of the Class A-1 Notes, the Class A-2 Notes, the Class A-3 Notes, the Class A-4 Notes, the Class B Notes, the Class C Notes, the Class D Notes and the certificates (collectively, the "**EVI**") will be retained by the depositor or another majority-owned affiliate of the sponsor (which for EU risk retention purposes and UK risk retention purposes will be a wholly-owned special purpose subsidiary of the sponsor). See "*Credit Risk Retention*" in this prospectus.

The issuing entity will also issue Class A-1 Notes with an initial principal balance of $234,000,000, Class B Notes with an initial principal balance of $22,510,000, Class C Notes with an initial principal balance of $18,760,000 and Class D Notes with an initial principal balance of $13,940,000. The Class A-1 Notes will have a final scheduled distribution date of October 16, 2023. The Class B Notes will have a final scheduled distribution date of April 17, 2028. The Class C Notes will have a final scheduled distribution date of April 17, 2028. The Class D Notes will have a final scheduled distribution date of May 16, 2033. The Class A-1 Notes, the Class B Notes, the Class C Notes and the Class D Notes are not being offered under this prospectus. The Class A-1 Notes, the Class B

Page | 9

*Receivables Principal Balance*

The initial aggregate discounted principal balance of the receivables to be sold to the issuing entity on the closing date, which is the present value of all remaining payments as of the cutoff date,

discounted for each receivable, at the greater of 8.00% per annum and the actual annual percentage rate of the receivable, is $1,071,953,466.28, which represents the purchase price paid by the depositor to the sponsor for the receivables. We refer to this initial balance as the **"initial aggregate receivables principal balance."** We refer to the aggregate principal balance of all receivables as the **"aggregate receivables principal balance."**

As of the cutoff date, the 8.00% discount rate was applied to a receivables balance of $928,397,074.94, which is approximately 83.42% of the aggregate amount financed of all receivables of the issuing entity.

**The Sponsor, the Servicer and its Affiliates Must Comply with Governmental Laws and Regulations that are Subject to Change and Involve Significant Costs**

Ally Bank and its affiliates, including Ally Financial, are governed by numerous foreign, federal and state laws and the supervision and examination of various regulatory agencies. In July 2010, Congress passed the Dodd-Frank Act, which has adversely affected and could further impact the financial services industry. The financial services industry has undergone and may continue to undergo further increased regulation, such as additional disclosure and other obligations, restrictions on pricing and enforcement proceedings resulting from the Dodd-Frank Act and other governmental entities.

Compliance with the implementing regulations under the Dodd-Frank Act and the oversight of the SEC, the Consumer Financial Protection Bureau ("CFPB") or other government entities, as applicable, has imposed costs on, created operational constraints for, and placed limits on pricing of consumer products with respect to banks such as the sponsor. Because of the complexity of the Dodd-Frank Act, the ultimate impact of the Dodd-Frank Act and its effects on the financial markets and their participants will not be fully known for an extended period of time. Therefore, requirements imposed by the Dodd-Frank Act may have a significant future impact on the servicing of the receivables, or on the regulation and supervision of the servicer, the administrator, the sponsor, the depositor, the issuing entity or their respective affiliates.

The CFPB has successfully asserted the power to investigate and bring enforcement actions directly against securitization vehicles. On December 13, 2021, in an action brought by the CFPB against National Collegiate Master Student Loan Trust, the U.S. District Court for the District of Delaware denied a motion to dismiss filed by a securitization trust by holding that the trust is a "covered person" under the Dodd-Frank Act because it engages in the servicing of loans, even if through servicers and sub servicers. On February 11, 2022, the case was stayed pending the defendant's interlocutory appeal to the Third Circuit Court of Appeals and possible consideration of, among other matters, whether

Ally Bank's process of acquiring receivables begins, in general, with the application by a customer for financing from a dealer for the purchase of a motor vehicle. Applications are initiated through websites established and maintained by third parties.

Ally Bank currently uses an underwriting process in which applications are reviewed solely by Ally Bank credit underwriters. For receivables originated prior to April 2017, Ally Bank and Ally Financial used an underwriting process in which applications were reviewed solely by Ally Financial credit underwriters. Under the previous process, those credit underwriters used Ally Bank's underwriting standards when evaluating applications on behalf of Ally Bank.

The current application evaluation process begins with the placement of each application into one of 19 analytical categories or "segments," based on specified aspects of the applicant's credit profile and, in many cases, whether the related vehicle is new or used. Ally Bank then evaluates each application by applying a proprietary credit scoring algorithm, which it refers to as a "scorecard," tailored to the applicable segment. Ally Financial and Ally Bank designed the initial scorecards with assistance from a third party credit scoring company. Inputs used by the scorecards vary, but typically include, among other items: (1) severity and aging of delinquency; (2) number of credit inquiries; (3) loan-to-value ratio; and (4) payment-to-income ratio. The scorecards are reviewed and updated on a periodic basis in order to account for changes in the perceived impact of specific inputs on applicant creditworthiness. The most recent scorecard redevelopment was implemented in August 2017.

The output of the proprietary scorecard is referred to as the "Ally score." The Ally score predicts the statistical likelihood that a loss will occur with respect to that receivable, but does not predict the performance of any receivable with certainty. Ally Bank uses the Ally score and other credit scores to sort applicants into 30 tier grades. Concurrently with this process, Ally Bank takes other steps to gather information regarding the applicant, such as checking lists maintained by the Office of Foreign Assets Control and performing fraud and duplicate application checks.

Once the information is gathered, Ally Bank analyzes the application to determine whether to approve it and offer to purchase the receivable. These determinations are made on the basis of all of the information available to Ally Bank, including the following:

- the applicant's credit tier and Ally score,

- the applicant's experience in managing installment and revolving debt,

- the asset value of the vehicle and the loan-to-value ratio for the receivable,

- the term of the receivable, and

- the applicant's ability to pay.

- as of the sale date, to the best of its knowledge, the receivables are free and clear of all filed security interests, liens, charges and encumbrances on account of work, labor or materials other than tax liens and other liens that arise by operation of law and no offsets, defenses or counterclaims have been asserted or threatened,

- as of the sale date, each receivable is or will be secured by a first perfected security interest in favor of Ally Bank in the financed vehicle, and

- each receivable, at the time it was originated complied, and as of the sale date complies, in all material respects with applicable federal and state laws, including, without limitation, consumer credit, truth-in-lending, equal credit opportunity and disclosure laws.

Additionally, Ally Bank will represent and warrant to the selection criteria set forth in "*The Receivables Pool—Criteria Applicable to the Selection of Receivables*" in this prospectus.

In the trust sale agreement, the depositor will assign the representations and warranties of Ally Bank, as set forth above, to the trust, and will represent and warrant to the trust that the depositor has taken no action which would cause the representations and warranties of Ally Bank to be false in any material respect as of the sale date.

As of the last day of the second, or, if the depositor elects, the first, month following the discovery by Ally Bank, the depositor, the servicer, the owner trustee or the indenture trustee of a breach of any representation or warranty of the depositor or Ally Bank that materially and adversely affects the interests of the securityholders in any receivable, the depositor, unless the breach is cured in all material respects, will repurchase, or will enforce the obligation of Ally Bank under the pooling agreement to repurchase, the Warranty Receivable from the trust at a price equal to the Warranty Payment.

The depositor or Ally Bank, as applicable, will be entitled to receive any amounts held by the servicer for that Warranty Receivable. These repurchase obligations constitute the sole remedies available to the trust, the noteholders, the indenture trustee, the certificateholders and the owner trustee for any uncured breaches.

In the servicing agreement, the servicer will covenant that:

- except as contemplated in that agreement, the pooling agreement, the trust sale agreement, the indenture and the trust agreement, the servicer will not release any financed vehicle from the security interest securing the receivable, and

- the servicer will do nothing to impair the rights of the indenture trustee, the owner trustee, the trust, the noteholders or the certificateholders in the receivables.

As of the last day of the second, or, if the servicer so elects, the first, month following the discovery by the servicer, the owner trustee or the indenture trustee of a breach of any covenant that materially

to a financed vehicle or the interest of the indenture trustee in the financed vehicle. Also, Ally Bank will hold any certificates of title relating to the vehicles in its possession as custodian for the depositor and the trust pursuant to a custodian agreement entered into pursuant to the servicing agreement. See "*The Transfer Agreements and the Servicing Agreements—Sale and Assignment of Receivables*" in this prospectus.

Under the Uniform Commercial Code, a purchaser of chattel paper who takes physical possession (or, in the case of electronic chattel paper, takes control) of the chattel paper may have priority over the seller and its creditors in the event of the seller's bankruptcy. If a retail installment sale contract is amended and the purchaser does not or is unable to take physical possession (or, in the case of electronic chattel paper, control) of the signed original amendment, there is a risk that creditors of the selling dealer could have priority over the trust's rights in the contract.

An assignment of the nature of the assignment contained in each of the pooling agreement and the trust sale agreement is an effective conveyance of a security interest without amendment of any lien noted on a vehicle's certificate of title, and the assignee succeeds by the assignment to the assignor's rights as secured party. In the absence of fraud or forgery by the vehicle owner or Ally Bank or administrative error by state or local agencies, in most states the notation of the secured party's lien on the certificates of title will be sufficient to protect the trust against the rights of subsequent purchasers of a financed vehicle from an obligor or subsequent lenders to an obligor who take a security interest in a financed vehicle. If there are any financed vehicles as to which Ally Bank failed to obtain a perfected security interest, its security interest would be subordinate to, among others, subsequent purchasers of the financed vehicles and holders of perfected security interests. This failure, however, would constitute a breach of the warranties of Ally Bank under the pooling agreement and, if the interests of the securityholders in the receivable are materially and adversely affected, would create an obligation of Ally Bank to repurchase that receivable unless the breach is cured. Similarly, the security interest of the trust in the vehicle could be defeated through fraud or negligence and, because the trust is not identified as the secured party on the certificate of title, by the bankruptcy petition of the obligor.

Transfer and release of security interests in the vehicles is generally governed by the motor vehicle registration laws of the state in which the vehicle is located. Failure to comply with these detailed requirements could result in liability to the trust or the release of the lien on the vehicle or other adverse consequences. Some states permit the release of a lien on a vehicle upon the presentation by the dealer, obligor or persons other than the servicer to the applicable state registrar of liens of various forms of evidence that the debt secured by the lien has been paid in full. For example, the State of New York passed legislation allowing a dealer of used motor vehicles to have the lien of a prior lienholder in a motor vehicle released, and to have a new certificate of title with respect to that motor vehicle reissued without the notation of the prior lienholder's lien, upon submission to the Commissioner of the New York Department of Motor Vehicles of evidence that the prior lien has been satisfied. It is possible that, as a result of fraud, forgery, negligence or error, a lien on a financed vehicle could be released without prior payment in full of the receivable.

year period. In cases where the obligor objects or raises a defense to repossession, or if otherwise required by applicable state law, a court order must be obtained from the appropriate state court, and the vehicle must then be repossessed in accordance with that order. A secured party may be held responsible for damages caused by a wrongful repossession of a vehicle.

**Notice of Sale; Redemption Rights**

The Uniform Commercial Code and other state laws require the secured party to provide the obligor with reasonable notice of the date, time and place of any public sale or the date after which any private sale of the collateral may be held. In addition, a consent order between Ally Financial and the Federal Trade Commission imposes similar requirements for the giving of notice for any sale. The obligor has the right to redeem the collateral prior to actual sale by paying the secured party the unpaid principal balance of the obligation plus reasonable expenses for repossessing, holding and preparing the collateral for disposition and arranging for its sale, plus, in some jurisdictions, reasonable attorneys' fees, or, in some states, by payment of delinquent installments or the unpaid balance.

**Deficiency Judgments and Excess Proceeds**

The proceeds of resale of the financed vehicles generally will be applied first to the expenses of resale and repossession and then to the satisfaction of the indebtedness. In many instances, the remaining principal amount of the indebtedness will exceed the proceeds. While some states impose prohibitions or limitations on deficiency judgments if the net proceeds from resale do not cover the full amount of the indebtedness, a deficiency judgment can be sought in those states that do not prohibit or limit these judgments. However, the deficiency judgment would be a personal judgment against the obligor for the shortfall, and a defaulting obligor can be expected to have very little capital or sources of income available following repossession. Therefore, in many cases, in the judgment of the servicer, it may not be useful to seek a deficiency judgment or, if one is obtained, it may be settled at a significant discount.

Occasionally, after resale of a vehicle and payment of all expenses and all indebtedness, there is a surplus of funds. In that case, the Uniform Commercial Code requires the creditor to remit the surplus to any holder of a lien on the vehicle or if no lienholder exists or there are remaining funds, the Uniform Commercial Code and a consent order between Ally Financial and the Federal Trade Commission require the creditor to remit the surplus to the former owner of the vehicle.

**Consumer Protection Laws**

Numerous federal and state consumer protection laws and regulations impose substantial requirements upon lenders and servicers involved in consumer finance. These laws include the Truth-in-Lending Act, the Equal Credit Opportunity Act, the Federal Trade Commission Act, the Fair Credit Reporting Act, the Fair Debt Collection Procedures Act, the Magnuson-Moss Warranty Act, the Consumer Financial Protection Bureau's Regulations B and Z, the Servicemembers Civil Relief Act

deception concerns related to the prices of and fees charged in connection with automobile financing, including add-on products such as GAP insurance and extended warranties. Also, on June 23, 2022 the Federal Trade Commission issued a proposed rule that would (i) prohibit motor vehicle dealers from making certain misrepresentations in the course of selling, leasing, or arranging financing for motor vehicles, (ii) require accurate pricing disclosures in dealers' advertising and sales discussions, (iii) require dealers to obtain consumers' express, informed consent for charges, (iv) prohibit the sale of any add-on product or service that confers no benefit to the consumer, and (v) require dealers to keep records of advertisements and customer transactions. At this stage, it is unknown whether a final rule will be issued, the exact requirements of any final rule if issued or if any final rule would have a broader potential impact on auto lending practices.

Under the pooling agreement, Ally Bank will represent to the depositor that each receivable complies with all requirements of law in all material respects. The depositor will have assigned the representation, among others, to the trust. Accordingly, if an obligor has a claim against the trust for violation of any law and that claim materially and adversely affects the trust's interest in a receivable, the violation may create an obligation to repurchase the receivable unless the breach is cured in all material respects. See *"The Transfer Agreements and the Servicing Agreements—Sale and Assignment of the Receivables"* in this prospectus.

**Transfer of Vehicles**

Each receivable prohibits the sale or transfer of the related vehicle without the servicer's consent. Upon a sale or transfer of the financed vehicle without the servicer's consent, the servicer is permitted to accelerate the maturity of the receivable. If the servicer consents to a sale or transfer, the servicer will purchase the related receivable. Although the servicer, as agent of the trust, may enter into a transfer of equity agreement with the secondary purchaser for the purpose of effecting the transfer of the vehicle, the new obligation will not be included in the pool of receivables.

https://www.sec.gov/Archives/edgar/data/1946472/000119312522258761/d370215d424b5.htm#tx370215_5

# REPORT SUMMARY

**Agreement:**

- On July 31, 2021, OLIVIA DENISE WILSON executed a negotiable promissory note and a security interest in the form of an Agreement in the amount of $28,149.75. This document was filed in the Official Records of Lexington County, South Carolina. ***The original Seller of the Agreement/Contract is PERFORMANCE FORD.***

**Securitization (The Note):**

- The NOTE based on the researched performed was sold, transferred, assigned and securitized into the **ALLY AUTO RECEIVABLES TRUST 2022-2** with a Closing Date of on OCTOBER 12, 2022.

**No recorded Assignment of Agreement:**

- No recorded Assignment of Agreement in the Official Records, Lexington County, South Carolina. Assignments must be filed and recorded before a proper repossession/foreclosure and any attempt to recover the Goods as described.

## SECURITY DESCRIPTION FROM BLOOMBERG
### Bond Summary

**SECURITY DESCRIPTION**
**Original Collateral Characteristics and Restrictions.**



## STRUCTURED FINANCE NOTES
### Shows the list to the Securitization Participants

ALLYA 2022-2 A3   99.510109 /          Yield 5.294 5.243              EVAL
As of 03 Jan  Avg Life 1.3    ZV  1.06 Collateral 100.0% AUTO 6.5%
Documents •                                                                    Structured Finance Notes

ALLY 2022-2 ALLY AUTO RECEIVABLES TRUST
Underwriter
Lead Manager          Citigroup                                        •
Lead Manager          JP Morgan Securities LLC
Lead Manager          RBC Capital Markets
Co Manager            CastleOak Securities LP                          •

Original Servicers                         Trustee
Master     Ally Bank                       US Bank National Association
Sub        Ally Servicing LLC

                                           Paying Agent
                                           US Bank National Association

Originator/Seller          Deal%           Asset Manager
Ally Bank                  100

                                           Swap Counterparty

Insurer                    Deal%

81 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852
4565 8900        Singapore 65 6212 1000       U.S. 1 212 318 2000        Copyright 2024 Bloomberg F
                                   SN 455411 EST  GMT-5:00 H946-1571-173 04-Jan-2024 16:15:30

## SEARCH RESULT IN FIDELITY INVESTMENT FOR CUSIP# 02008MAC3
### This screen shows the Trust is an Investment Bond actively being Traded.

**Fidelity**  CUSTOMER SERVICE | PROFILE | OPEN AN ACCOUNT | VIRTUAL ASSISTANT | LOG OUT    🔍 Search or get a quote

Accounts & Trade          Planning & Advice          News & Research          Products          Why Fidelity

Trade    Welcome to the new Fixed Income Trading Experience. ❶

**Account**
[ Select an Account... ▾ ]

| Cusip | ALLY AUTO REC TR SER 2022-2 CL A-3 4.76000% 05/17/2027 2022-2 BOND | | | |
|---|---|---|---|---|
| 02008MAC3 | **Ask Price** | **Ask Yield** | **Ask Quantity(min)** | **Third Party Price** |
| | -- | -- | --(--) | 99.522 |

**Fidelity**  CUSTOMER SERVICE | PROFILE | OPEN AN ACCOUNT | VIRTUAL ASSISTANT | LOG OUT    Sear

Accounts & Trade          Planning & Advice          News & Research          Products

Research > Fixed Income > Individual Bonds

## ALLY AUTO REC TR SER 2022-2 CL A-3
4.76000% 05/17/2027 2022-2 BOND

| Overview | Price & Performance |

### Details

| | |
|---|---|
| CUSIP | 02008MAC3 |
| ISIN | US02008MAC38 |
| SEDOL | BPDY4J0 |
| Pay Frequency | MONTHLY |
| Coupon | 4.760 |
| Maturity Date | 05/17/2027 |
| Moody's Rating | AAA |
| S&P Rating | AAA |
| Issuer Events | NO |
| Survivor Option | N/A |
| Bond Type | Corporate |
| Sector | N/A |
| Interest Accrual Date | 10/12/2022 |

### Issuer Information

| | |
|---|---|
| Issue Date | 10/04/2022 |
| Dated Date | 10/12/2022 |
| First Coupon Date | 11/15/2022 |
| Next Coupon | 01/15/2024 |
| Last Coupon | -- |
| Workout Date | 05/17/2027 |
| Original Issue Amount | $351,000,000.00 |
| Issue Price | -- |

### Coupon Information

| | |
|---|---|
| Coupon Type | FIXED |
| Current Rate Effective Date | 10/05/2022 |
| Day Count Basis | 30/360 |
| Trading Flat | NO |

https://fixedincome.fidelity.com/ftgw/fi/FIBondDetails?cusip=02008MAC3

Page | 31

(The selling, assigning or transferring of the Agreement is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Agreement, and keep a small portion of the payment for Servicing Fees. Usually, when a Beneficiary states that their Agreement was sold, they are referring to Servicing Rights.)

Securitizing an Agreement

Securitization is the process of selling credit instrument to the public or private investors. it is a method with many issues to be considered. The methodology of securitization generally followed these steps:

- A firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the firm "pre-sold" the bonds.

- The Wall Street firm would approach a bank and usually offer them a warehouse Line of Credit. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Purchase Agreement. These documents outlined the procedures for the creation of the Agreement and the administering of the Agreement prior to, and after, the sale of the Agreement to Wall Street.

- The Bank, with the guidelines, essentially went out and found "buyers" for the agreement, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Bank would execute the Agreement, collecting payments until there were enough Agreement funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary Agreement were funded, the Originator would then sell the Agreement to the "Sponsor", usually either a subsidiary of the Wall Street firm, or a specially created Corporation or Special Purpose Vehicle (SPV) of the bank. At this point, the Agreement are separated into "tranches", where they will be eventually turned into bonds.

- Next, the Agreement were "sold" or most usually assigned" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the Bank or other entities are protected from what might happen to the Agreement, and/or the Agreement are "protected" from the Bank. The "Depositor" would be, once again, created by the Wall Street firm or the Agreement.

**Exhibit I**

## COPY OF AGREEMENT PROVIDED BY THE BUYER

### RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE
### THIS IS A CONSUMER CREDIT DOCUMENT
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| OLIVIA DENISE WILSON 243 DRAYTON HALL DR WEST COLUMBIA, SC 29172 LEXINGTON CO | N/A | PERFORMANCE FORD 213 Southeast Blvd Clinton, NC 28328 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2019 | RAM PROMAST | 3C6TRVAG4KE608940 | ☑ business   ☐ agricultural    Personal, family, or household unless otherwise indicated below    N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $1,000.00 is |
|---|---|---|---|---|
| 7.39 % | $ 4,661.69 | $ 28,149.75 | $ 32,701.44 | $ 33,701.44 |

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose or you may provide the required insurance through an existing policy owned or controlled by you. Insurance you provide must be acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

#### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $ 681.28 | MONTHLY    beginning 09/14/21 |
| N/A | $ N/A | N/A |

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability:   ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium:

Credit Life $   N/A
Credit Disability $   N/A
Insurance Company Name   N/A
  N/A
Home Office Address   N/A
  N/A

N/A

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ _15.00_ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item

## SELLER ASSIGNS ITS INTEREST TO ALLY FINANCIAL

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _OLODW_    Co-Buyer Signs X _N/A_

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _OLODW_    Date _07/31/21_   Co-Buyer Signs X _N/A_    Date _N/A_

Buyer Printed Name _OLIVIA DENISE WILSON_    Co-Buyer Printed Name _N/A_

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name _N/A_    Title _N/A_

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _N/A_    Address X _N/A_

Seller signs _PERFORMANCE FORD_    Date _07/31/21_   By X _____    Title _F+I_

Seller assigns its interest in this contract to _ALLY FINANCIAL_    (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

Seller

By X _PERFORMANCE FORD_    Title _____

LAW FORM NO. 553-NC-ARB (REV 10/19)
©2019 The Reynolds and Reynolds Company. TO ORDER: www.reysource.com, 1-800-344-0996, fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

i-Authoritative Copy [20210803]

**ORIGINAL LIENHOLDER**

Title information data source: Documents provided by the Buyer.

1. OLIVIA DENISE WILSON acquired an Agreement on July 31, 2021 in the amount of $28,149.75 for a Used 2019 RAM PROMAST VIN# 3C6TRVAG4KE508940.

2. No Assignment made as required by the Prospectus. Examiner recommends immediate production of document and review of all purchase documents and then notarized Agreement endorsements among all relevant parties.